Good morning, Your Honor. It's Vince Bronco, Federal Defenders, on behalf of Ms. Schemenauer. I apologize in advance I'm battling a cold so my voice isn't what it normally is. Don't get too close to me. I won't get any closer than this, Your Honor. This court must reach the merits of Ms. Schemenauer's claim that she is entitled to a judgment of acquittal based on either the collateral order exception or, in the alternative, construe Ms. Schemenauer's appeals as a petition for rent of mandamus. The fact that this court has jurisdiction under the collateral order exception is compelled by this court's decision in Zado. Zado holds that a district court's failure to rule on a motion for judgment of acquittal presents a colorable double jeopardy claim. This case presents a colorable double jeopardy claim for the same reason, and that is essentially What were the exact facts of Zado? Pardon? What were the exact circumstances in Zado? The exact circumstances is there was a magistrate trial. The magistrate court reached a verdict in Zado, and the defendant appealed to the district court. The district court, I believe, held that the defendant had a right to a jury trial on the case, so reversed on that, but refused So there was never a ruling in that case on the Rule 29 motion, right? Correct. In this case, there was, right? No. What I'm saying is No, but I'm asking you that question. In this case, there was a ruling on the Rule 29 motion. There was not a ruling on the Rule 29 motion based just on the evidence that the government presented in its case in chief. Here, the district court reserved ruling on the motion at the end of the government's case, and then when it issued its final Rule 29 decision, and this is at Excerpt of Record 198, and I'll refer to the entire trial transcript to submit both counts to the jury. So there was never a ruling based on what Ms. Shiminar was entitled to just on the evidence that the government presented, and that's clear in Rule 29. You're saying that they made an error when he did the Rule 29 motion, but he purported to do it, whereas in the other case, he didn't purport to do it at all. He simply decided on the basis of some other issue. Correct. And the similarity in that is right now there's still an unresolved Rule 20 motion for judgment of acquittal that the district court never ruled on. So that's where you have a similarity. Well, he ruled on it. He ruled on it wrong in this case, you say. Ruled on it in a legally erroneous fashion, but he purported to rule on it. Well, essentially, there's two rulings on a Rule 29. There's a non-ruling based on the government's evidence. The district court never ruled, so that is entitled to a colorable claim under Zotto. But what the district court did is they ruled on the Rule 29 that was submitted after all the evidence was presented, which includes the evidence that the defense presented. So that was the improper. There is a ruling on that, and I guess under Richardson, it's kind of clear that that may not be a colorable issue. But under Zotto, it is clear when a district court doesn't rule that there is appellate jurisdiction. And so this court has jurisdiction under Zotto because it's presented with a factual situation where the district court has not ruled on a Rule 29 that it should have. Rule 29 compels that when a district court reserves ruling at the end of the government's case in chief, that you're entitled to have the district court rely on just the evidence that was presented at the time it reserved. So Ms. Shiminar had a right to this determination. It hasn't been made, so she has presented a colorable claim under Zotto. Anything – and that's really – the court's in an order of how to reconcile Zotto and Sarkazian, and that's the way to do it. In Sarkazian and the cases it relied upon, the district courts, and even Richardson, if we want to take it a step further, the Supreme Court – Wasn't Sarkazian basically the same as Zotto in the sense that they didn't rule on the Rule 29 motion? Am I wrong about that? No. Sarkazian they did rule on the Rule 29, and that is an error in the review of the claim. I didn't think so. I thought that in Sarkazian there was also an alternative ground on which the – there was a new trial ordered. Correct. The new trial was granted and the Rule 29 was denied, and you'll find that at 982-983 of Sarkazian. And also on the case that it relies on, on Gutierrez-Zamarro at page 236, that also was a case where the district court did deny the Rule 29. And that's the exact situation in Richardson also. The district court in that case had denied the Rule 29. So the string of authority that the government's presenting – Could you show me where in Sarkazian you conclude that the district court did rule on the Rule 29? Yes. And this is right under the – it's on page 983, right after the – probably at the top of the page. And it said the district court granted the citizen a new trial. Let's find it. Okay. 983. Actually, go to 982. And this is under the title, Sufficiency of the Evidence Underlying the Extortion Count. What headnote is it? I don't know. It's right above headnote 23. Headnote 23, I believe, is at the end of the page on 982. And I'll read from it. At the close of the government's case, and again at the close of evidence – I can't pronounce the defendants' names in that case – they each moved for a judgment of acquittal on the extortion count based on sufficiency of the evidence. The district court denied the defendants' motions for the judgment of acquittal and McKillen's motion for a new trial, but granted a new trial to Siminoff on an unrelated issue. Siminoff and McKillen contended the district court erred in denying their motions. The next head point is this court getting into the – whether or not it had jurisdiction to appeal. So it is clear in that decision that the judgment of acquittal was denied. It's clear in Richardson that the judgment of acquittal was denied in that case. And it's clear in Zotto that the judgment of acquittal was not ruled on. It's clear in this case that the judgment of acquittal based on the evidence solely on the government's case in chief was not ruled on. And again, I rely on Excerpt of Record 189 where the court states – So basically what you're saying is that there is – that Richardson's footnote about the area of colorable double jeopardy claim that's foreclosed is precisely the situation in Richardson, which is where there was a Rule 29 motion that was ruled on. Correct. And that the cases – our cases are reconcilable – I mean, almost backwards in a weird sort of a way, because we seem to be allowing the cases to go forward where there was no ruling on the Rule 29 motion, but not where there was a ruling on the Rule 29 motion. That's what the case law in this circuit is after Richardson. And then the question is where does this case fall because we have this odd peculiarity here, which is there was a ruling on a sufficiency of the evidence issue, which there wasn't in any of the other cases, but you're saying you did it wrong. I'm saying there's essentially in this case two rulings, the one at the end of all the evidence and the one just on the government's. Since there was not a ruling at the government's, we're still in Zotto land. And so you still have a colorable claim under Zotto, and you can't overrule Zotto. And that's the way to reconcile Zotto with Richardson and Sarkisian and the other line of cases. Well, how about – is there a difference in the two cases, Zotto and Sarkisian, in that in Zotto there was a final judgment by the trial court, the magistrate, and the appellate court is looking at a final judgment. If this in Sarkisian, as in this case, there is no final judgment. We've got a hung jury. No. Again, in Sarkisian there was no hung jury. The jury reached a verdict in Sarkisian. A new trial was issued by the district court. And that's identical to Zotto, where, you know, the jury reached a verdict and a new trial was issued. Well, in Sarkisian, you say – all right, say that again. In Sarkisian, the factual situation is judge denies a Rule 29 during trial. After trial, grants a – there's a jury conviction in Sarkisian. Right. After trial, judge grants a new trial. And that claim is prohibited because it's not colorable after Richardson. Because, and what I'm arguing, the way to reconcile Zotto in that case is because there was a ruling on the Rule 29. Well, the judge ran a motion for a new trial. Which basically – and the other thing – What happened after that? Pardon? I mean, you know, I've got to admire you guys down in San Diego. You come up with – every case we have is a real puzzler. I don't know – you just sit around and – I don't blame you for doing it. Because it's not much fun being a federal defender anymore. Oh, I think it's a lot of fun, Your Honor, being a federal defender. No. But I think we just take this court's case law as we got it, which is, you know, we have a case out there that says you have a colorable claim. If there's no Rule 29, I have a case that fits those facts. I'm here. Let's get to the merits. And the other thing is, if there is a fallback position, is that this court believes that there is no jurisdiction, I still think the court should invoke jurisdiction under a writ of mandatements. Because – If we were to follow Sarkisian, what would the ruling be in your case? My case is factually distinguishable, so you can't. You can't follow Sarkisian here. And distinguishable why? Because in Sarkisian, the district court ruled on the Rule 29, and on this case there still is an open Rule 29 motion that the district court did not rule on. That's at the close of the government's case. Correct. And the judge said – Your Honor, we haven't ruled on this first Rule 29 motion. Well, any time a judge takes the – it under submission, they have an obligation to review just that evidence, and the district court didn't in this case. But you did make a motion when, after all the evidence was in? We made a motion at the two appropriate times. When the government arrested, we made a motion. And at the end of the case, we made a motion. The judge reserved ruling each time and did not actually rule until we made the motion to dismiss based on double jeopardy. I see. But in the meantime, it went to the jury. Correct. And they did not reach a verdict. They did not reach a verdict. What about Gutierrez-Zamorano? What were the facts there? It's the exact same case of Sarkazian. Again – Because they denied the post-trial motion for acquittal. Correct. And it was a case where the jury reached a verdict and was ordered a new trial. No, the jury didn't reach a verdict. And who moved for the mistrial? In what? In your case. The jury sent back a note saying we're deadlocked 11 to 1, so it was just granted without any objection from any party. So do we have a final judgment? No. So then it goes back to another trial. Well, the problem is you can't overrule Zotto. Well, I'm thinking you can because not overrule it, but I'm thinking you can – one, there was a final judgment. The other was not. There's a final judgment in the sense that, and this is all that's necessary under the collateral order rule, that – In which case are you talking about? This case. The district court's decision, the ruling on the Rule 29 was final. Well, no, but it's not a final judgment. It's a final judgment when you have a hung jury and a mistrial. So that is final. One of the difficulties in these line of cases is it becomes blurry where the colorable claims get in. And the thing is, under ADME, the Supreme Court, they basically hold that any double jeopardy motion is subject to the collateral order exception. But then they come in in Richardson. And Richardson, in the cases interpreting, basically said, well, okay, yes, there's jurisdiction under this order, but you can weed out these appeals in summary proceedings unless the claim is colorable. Well, no, because more than that, they seem to say that that is a sort of one-shot deal. You get an appeal on every variant but only once. And after that, it's not colorable anymore. Well, that the question, the jurisdiction question, yes, the court has jurisdiction, but it can weed it out under its supervisory powers. Because what it's saying is, yes, you have these double jeopardy motions, but you can, and this is in a footnote in ADME, and there is language in Richardson's that supports it, that basically says. You're saying that because the judge didn't rule on the motion for judgment of acquittal, the jeopardy sets in? That this Court has a colorable claim under Zotto. But in Zotto, with regard to Judge Hugg's question, there wasn't, in fact, finality because the district court had overruled the magistrate. So what you had was exactly the same posture, right? In other words, you didn't – in Zotto, if I'm understanding correctly, what you had in the end, in terms of the relationship between the district court and this Court, was a situation in which the district court, while there had formed earlier before the magistrate been a conviction, what you had with regard to the district court order was a determination that the case was not final. Well, the thing is, in Zotto, you didn't have jeopardy attaching in the same sense. And this would be controlled by Sarkisian in that line of cases, is when a court gives a new trial, that's just like saying no jeopardy ever attached. So because in Zotto, the district court ordered a new trial, it's as if jeopardy never attached. So that distinguished – distinguished. So the fact that there was a magistrate judge opinion in Zotto was irrelevant. Correct. To this question, to the jurisdiction question. To the jurisdiction. Well, I see that a little differently. As I read Duval's opinion in Zotto, he's saying, in effect, when the trial court has rendered a final judgment, that's the magistrates, and it comes to the district court, which was then the appellate court, that the district court should have ruled on the question of sufficiency of evidence and, therefore, double jeopardy. And you're looking at it, I believe, that we're concerned with the district court's appeal to the – to the – to our court, and it seems to me that they can certainly be distinguished, because we've got a magistrate judge's decision being reviewed by an appellate court. Why do we have to apply that to this situation? I have three answers. First of all, in Zotto itself, it says the only real difference between the situation in Zotto and the situation in Richardson is the fact that there's been a Rule 29 that has not been ruled on. That is what – and that's at page 392 of the opinion. That's what Zotto itself saw as the real distinguishing – Hasn't been ruled on by the district court. It was ruled on by the magistrate court, but not by the district court. Is that right? Now – and then you look to, okay, well, say this is in the appellate context of a district court decision going to an appeal. Well, the fact that the district court in Zotto had ordered the new trial means just like in Sarkazian, the district court had ordered a new trial. But if you step back in Zotto, although the opinion doesn't flow in this direction because it really doesn't get to the magistrate district judge issue until he gets to the merits, but if the ultimate question under the Richardson footnote is whether there was a colorable double jeopardy question, there, there was a colorable double jeopardy question as between – which was, what is the relationship between the magistrate judge and the district court in terms of the district court's obligation to – under the double jeopardy clause? My answer to that is to look at the law on what the relationship between a district court decision and these courts' decision when you reverse on a separate basis and then still reach the merits of a Rule 29 motion. And that's from U.S.B. Bishop. And what Bishop says is, no, reaching the merits isn't required by the double jeopardy clause, but it's still the better practice. So that's why you're saying it's really supervisory power. Yes. And you're saying that the ruling that ultimately – the ultimate ruling on the merits in Zotto was really not a double jeopardy ruling is what you're saying. Correct. And 47 – I agree with Judge Fragerson. You come up with interesting versions of things. Okay. Thanks. May it please the Court. Carla Bressler for the United States. This Court lacks jurisdiction to reach the merits of both the Rule 29 and double jeopardy claim under both Richardson v. United States and United States v. Circassian. At the onset, the government would like to point out that Appellant is making a motion for a separation between the Zotto case and, in fact, the rulings of the district court judge in the present case where none indeed exists. Referring to the excerpts of the record at page 197, line 20, the district court judge did rule on the Rule 29 motion, saying, so as to Rule 29, for the purposes of This record is absolutely silent on whether the judge, in her own discretion and her own experience, was ruling on the merits as of the close of the government's case, which also – And their argument – see, your position is that their argument is essentially that she did it wrong, not that she didn't do it. Correct, Your Honor. And furthermore, in answer to the Court's earlier questions – Can you tell me again where that was in the record? That's at the excerpt of the record, page 197, lines 20, and it goes on to the bottom of the page. And she answers the issue of whether or not she, in fact, ruled on the 29. And further answering this Court's questions – Well, did she say that she's ruling on the first Rule 29 motion? Your Honor, there was some discussion about whether or not the Court had ruled or not. During the course of the trial, in addressing the subsequent motion to dismiss based upon double jeopardy. This is coming at least a month after the hung jury event. And there's a discussion by the District Court of whether or not she ruled on it. And then, just to make certain that, in fact, it's ruled on, she goes ahead and rules on the Rule 29 motion. But in answer to the Court's – At the Rule 29 motion that was made at the end of the government's case, was she? Your Honor, the record is absent, which is why I cited this Court to the actual language of the District Court judge. Because it's admittedly unclear what she's basing that on. And we would argue that Appellant's argument a few moments ago to this Court that she was basing it on the entirety of the trial is not accurate either. She merely states in ruling on the double – in order to make a record to rule on the double jeopardy motion, that she, in fact, was denying the Rule 29 motion. But in answering to the Court's earlier questions, this record is absolutely clear that at the close of the government case, the Rule 29 motion was not renewed or queried by the trial defense counsel. At the opening of the defense case, the defense counsel did not inquire of the Court whether or not it had ruled on the Rule 29 motion. The entire trial was heard. There was then a note from the jury. And prior to the declaration of mistrial, again, the defense counsel did not inquire of the Court regarding the status of the Rule 29 motion. So then we have the Rule 29 motion being heard at the time of the double jeopardy motion brought some time after the trial, in fact, occurred. In Richardson and in Zarkezian, jeopardy was never terminated. The defendant had no double jeopardy claim, regardless of the sufficiency of the evidence. This determination, as the Court has already noted, was underscored in footnote 6 in Richardson, which held that claims of double jeopardy, such as Richardson's, could not be appealed before final judgment. That's exactly the case here. There was no final judgment in this case. Jeopardy never terminated. And as the defense counsel already cited to this Court ---- And what's your explanation for the Zato decision? Your Honor, some of those ---- It's nice when you don't like it. Some of those distinctions have already been pointed out by this Court. This was a decision, a final decision, and, in fact, a verdict was reached by the magistrate in Zato. Furthermore, as pointed out already by this Court this morning, there was the issue ---- and this is, again, a distinction that's pointed out by this Court ---- that there was no ruling by the district court regarding sufficiency of the evidence. In fact, in the present matter and in Zarkezian, as already noted earlier this morning, there was a ruling, both in this matter ---- But on what logic should it ---- I understand it's a distinction, but on what logic should it be that there's more of a double jeopardy problem if there was no ruling on the sufficiency of the evidence promotion, which was made, than if there was one? You'd think it would be the opposite, wouldn't you? Your Honor, I don't have that answer at my fingertips, and I would be happy to submit a more adequate answer at a further time if this Court so desires. Clearly, then, under both Richardson and Zarkezian, this Court lacks jurisdiction to rule on the merits of appellant's interlocutory appeal. But even assuming that this appeal could be heard, the record contains undisputed evidence sufficient to contain a conviction. Key elements of this evidence include that the appellant entered the United States at the San Ysidro Port of Entry as the sole visible occupant, the registered owner, and the driver of a truck modified specifically to conceal people in a special compartment in a decor speaker box.  Before you, Your Honors, are Exhibits 3, 4, 7, 8, and 9, which depicted first, which were admitted into trial. These exhibits depict what the material witness, Ms. Maria Ramirez Mejia, testified was a coffin-like box, which measured 70 inches by 18 inches wide, 70 inches long by 18 inches wide by 19 inches long. The senior inspector testified that on August 28th at the San Ysidro Port of Entry at about 1.20 p.m., the windows on the cab compartment over the decoy speaker box permitted no ventilation, and the heat inside that cab was overwhelming. The inspector testified that he tried to make contact with Ms. Maria Ramirez Mejia, and she did not respond. She was bathed in sweat when he freed her, and he determined it was necessary to call emergency medical personnel. The defendant admitted that the box was a coffin-like box. So, Your Honor, what is the evidence with regard to this case?  What is the evidence with regard to the finances of the case? Your Honor, not in this case, and not under the facts as came out in the briefs. I didn't say which way it came out. I said it was the harder question. Yes, Your Honor. Yes, and the government would concede that. But clearly, and interestingly in this case, we have 11 jurors convinced that there was sufficient evidence. Well, that's why you have a review for sufficiency. That's no answer. Yes, Your Honor. Okay. But the question is, what is the evidence with regard to the sufficient evidence with regard to the fact that she did this for monetary gain? Yes, Your Honor. First, we have her post-mortem admissions that she did this on three prior occasions in the year 2000 and earned $12,000. We have that both in the post-mortem admissions. All right. I'm sorry. Where did she have those? That evidence is both here. But that evidence came – this is what bothers me. That evidence came in as 404B evidence, didn't it? Your Honor, it's interesting because it's interlocutory – or it's interlocking, excuse me, corroboration. First, we have her waving Miranda on August 28, 2003, and talking about and admitting I understand. But why was that evidence admitted into trial as to what she had done previously? Why was that admitted into trial? Because it's – it was compelling evidence of her knowledge. Her knowledge of what? Her knowledge of both the fact that she was smugly inhaling based upon her prior experience. It's classed as 404B evidence, Your Honor. All right. But it's not – but it's not – it was not admissible and it wasn't admitted on the substantive question of whether she – of what she had done before and what she was doing now, right? So how can that support the conclusion that she was, in fact, doing it for monetary gain? It might support the conclusion that if somebody stuck money in her pocket, she knew it. But that's not the issue here. Yes, Your Honor. But there was a second – there was a second method that that issue was resolved, and that was with the testimony of Maria Ramirez Mejia, who testified that she was to pay $3,000. I understand that. But don't we have to get rid of the evidence? Don't we, for purposes of judging the sufficiency of the evidence on the monetary gain, have to take away the $12,000 and the fact that she had done this for money before? Isn't that just not usable? Your Honor, we would concede that it goes to the question of knowledge of the person in the case. Right. But not to the question of whether she had previously – or whether she was now doing it for monetary gain. Yes, Your Honor. Okay. And, again – So what is the evidence that we can use that is sufficient evidence on the question of whether she did this for monetary gain? Yes, Your Honor. And as is very frequently the case, it is, in fact, the testimony of the material witness, Ms. Ramirez Mejia, who said that she was to pay $3,000. And, furthermore, as all this foregoing evidence makes clear, a poet's theory of her case defies common sense, that she would be placed in this dangerous stifling compartment. She testified she was to be transported from Tijuana all the way up to Fountain Valley, a ride of three to four hours. Under those conditions, it defies belief that the registered owner, the driver of that car would not have known of the presence in there. But we're not talking about the presence. We're talking about the money issue. Yes, Your Honor. Let's go to the money issue. Yes, Your Honor. What is the sufficient evidence to show that she received money, that she knew that there was a – that this was done for monetary gain? The evidence at trial was that this is an alien smuggling business. There's a customer who's paying money, and the purpose of the business is to transport that person alive, and that the money is only paid upon her successful delivery at her destination in the States. Now, your ultimate position in the briefs is that it doesn't have to be paid to her. She doesn't have to make any money. Is there any support for that position? Yes, Your Honor. I didn't find any in Ninth Circuit case law, and I don't know if there's any anywhere. Does it make a difference that she was also charged with aiding and abetting? So if she were aiding and abetting the person in Mexico, wouldn't that be enough? Yes, Your Honor. And that case law is cited. It's United States v. Angwin. No, but Angwin doesn't say that. Angwin talks about the fact that you don't have to have – she doesn't have to actually receive the money, but she has to have an intent. There's nothing in Angwin that suggests she didn't have to have an intent to receive the money. Your Honor. Or a purpose of receiving the money. Your Honor, as this Court is well aware, in cases like this, there is never or very, very rarely. I'm just asking, what's the – is the government's position that her – let's suppose that her purpose was to get money for her friend, Ms. whatever her name was, and she didn't intend to get a penny. Does that mean she just liked this friend, which apparently she did? Your Honor, it wouldn't matter whether the money went to her or to her friend. All right. So I'm asking what your support for that proposition is. Not as to whether she got the money, but what her purpose was in doing the crime. Your Honor, we would cite United States v. Angwin that the Court is familiar with. But she doesn't say that. And what else? United States v. Yoshida, that the statute does not state that a defendant must commit the offense for the purpose of his or her own financial gain. And likewise, the statute does not state that the defendant must be the one to receive the financial gain. And that's at page 14 of our brief, Your Honor. Thus, the government was required to prove only that appellant acted for the purpose of private financial gain, not that she acted for the purpose of her own financial  I'm wondering, as I was mentioning earlier, if there was a charge of aiding and abetting and there was sufficient evidence, was there not, that she was participating with this woman in Mexico. So if she got nothing out of it, but the woman in Mexico was going to get money, she'd have been aiding and abetting financial gain, wouldn't she? Yes, Your Honor. And that would also be another grounds for our position. Thank you. Could you show me where you're reading from in Yoshida? I read here in Yoshida that the reasonable jury could conclude that Yoshida was a member of the smogging operation and therefore expected to reap some of its financial rewards based on the evidence. We were reading something else. Where is that? Your Honor, that would be our interpretation. So you were reading something that's not in the opinion? We were interpreting the opinion, Your Honor, and that's the case. You're supporting to stand here and you certainly represented to me that you were quoting from the opinion. Your Honor, no. I was citing from my brief, and I – that's what I was citing from. I wasn't reading from the actual language, and I cited to page 14 of the government's brief, that's all, to point out to the Court that we raised this argument earlier. Let me ask you this. Does the prosecutor have a responsibility where the trial judge overlooks ruling on a motion for judgment of acquittal to call that to the Court's attention? Certainly, Your Honor. Both parties, as officers of the Court, have both an obligation and an interest in ensuring that pending motions be resolved at the appropriate time. So the answer is yes. Yes, Your Honor. Did you do that? Your Honor, I did not. If there are no further questions, Your Honor, the government would submit. Okay. Thank you. I should say that I'm going to go back over that tape and see what you said, because I certainly believed that you said that you were reading from your sheet. I could be wrong, and I will check it. Your Honor, and if I did so, I do apologize, and that was not my intent to mislead this Court, merely to mention to the Court that I had raised – that the government had raised this issue before, and I apologize. Going back to the jurisdiction question, the logic of the distinction between an unruled-upon motion and a ruled-upon Rule 29 I submit is because everyone is entitled to at least a decision on the Rule 29. But the question is whether Jeopardy terminated. It certainly seems to have been more terminated if somebody has ruled on the sufficiency question than if it hasn't. I'm just trying to offer one logic of distinction. I understand. I understand that. There is some support that everyone, you know, each trier fact, the government and the defendant, are entitled to at least a ruling upon it. That's not the issue, because unless you can tie this into a double Jeopardy issue, you're in no place. It's not simply what you're entitled to in the abstract. It's whether you have some double Jeopardy argument here. I'm just trying to offer something. I'd like to put it out there. If there were no ruling on 29, wouldn't that be an additional reason to say it's not a final judgment? Zotto says no. And you're bound by Zotto. That's the problem. Well, wait a minute. No, wait a minute. How about Sarkissian? That doesn't say. If we were to follow Sarkissian and Richardson, there is no jurisdiction. So you're saying you're bringing in Zotto, in which there is a very considerable difference. One, it's a judgment from the magistrate judge being reviewed by an appellate decision of the district court that was a final judgment. Whereas in your case and in Sarkissian, we don't have a final judgment. One of the problems with that analysis is Zotto itself didn't rely on that distinction. When it was discussing the jurisdictional issue, it did discuss that when it reached the merits of the claim. In Zotto itself, they said the only real distinction between Zotto and Richardson was the distinction between the unruled-upon and ruled-upon language. But just for purposes of our jurisdiction, the question is the final judgment from the district court, and there wasn't one. Well, again, I go into this distinction of, yes, there's jurisdiction, but you could I didn't understand that's what Richardson was doing. I know you said that, but Richardson doesn't say that. It says there's no appeal. It doesn't say that you can have an appeal but dismiss it summarily. There is a note that you're relying on abney, which says But the note, the critical note in Richardson doesn't make the distinction that you're arguing. There's a case cited in the briefs, Wood, it's an out-of-circuit case, which lays down the exact analysis that I'm arguing. But I agree this Court has never explicitly adopted that analysis. But I would like to get in a couple extra to reconcile. Let me just ask you a question. The trial was held before a magistrate judge. In this case, no. In your case. Oh, in Zotto. In Zotto. Yes. You know, I've never encountered a situation where there was a trial before a magistrate judge and then an appeal to the district judge? Correct. Because it was a misdemeanor. Is that why? It was a misdemeanor offense. That was why. Yes. That was the reason. Usually when they go to the magistrate judge, there's a stipulation. It was a misdemeanor offense, and I think that's why the district court essentially gave them a new trial, because they're entitled to a jury determination on that case. In this summary, what do you do with this language? The double jeopardy principles underlying our rule in Zotto are no different when the appellate court is the district court as it was here. Then when the appellate court. Can you direct me to what page that is on the decision? Yeah. That's the last page. Okay. In fact, it's about the next to last paragraph, just above the last paragraph. Great. The double jeopardy principles. You see that? On the last page of the opinion. Last page of the opinion. It's the first paragraph under two. Okay. And toward the end of that paragraph. Okay. Well, the way I deal with it is the first sentence of that paragraph. Having held that we have jurisdiction over this appeal, we turn to the merits of the claim. So the court had already determined based on the district court not ruling that it had jurisdiction. But now it is summarizing the way I read this opinion. When they go back into the double jeopardy principles, underlying our rule are no different when the appellate court is the district court as it was here. Now, that doesn't have anything to do with the merits of it. He's summarizing there what the reason for the jurisdictional finding. Correct. It is saying we therefore hold that reversing the magistrate judgment of conviction, the district court must review the sufficiency of evidence underlying the defendant's conviction. Because it's a final judgment. It doesn't say because it's a final judgment. Well. And again, we're out of the jurisdictional issue here. We're into the merits. Well, but that doesn't look like it's talking about the merits, does it? The first sentence of that paragraph under Roman numerals. Yeah, but I'm talking about the summary that he's giving at the end. The double jeopardy principles underlying our rule that are no different when the appellate court is the district court as it was here. That has to do with jurisdiction, not merits. Well, let's agree to disagree because I think the hard thing is. How does it affect merits? Because it's under the section merits and already saying we've determined jurisdiction. We've gone through the principles of the collateral. But what do you do with the language? What do you do with that language? I would say that's. Is this irrelevant? They put that at the end? That goes to the merits of the claim, not to the jurisdiction of the claim. What part of the merits? How does it affect the merits at all? Whether or not that the court should remand for the district court to enter a ruling. I don't want to take up too much time for my next argument. The one thing I do have some trouble with is your representation that this is not a double jeopardy ruling, but a supervisory ruling. When, aside from anything else, this language means it certainly says that it's a double jeopardy ruling. The double jeopardy principles underlying our rule are no different when the appellate court is the district court. I agree there's problems with Zotto, but I'm just trying to read a consistent way that it is not overruled by other authority. And this is the best I've come up with. I don't think I created these problems. I'm just trying to interpret the court's time. What about the ultimate question? But if there's just a reasonable distinction, then we don't have to worry about Zotto. We follow Richardson and Sarkisian and the line of cases that say that there is no jurisdiction. Because I think the reasonable distinction is based on the unruled-upon Rule 29, and that's the analysis it got jurisdiction on. Okay. That's my answer. But then you have a further problem, which is, you know, is this really an unruled-upon Rule 29, as opposed to erroneously ruled-upon Rule 29? That's what I wanted to just point to specific excerpt of record pages real briefly. We did make the motion for Rule 29 on excerpt of record page 137. The district court did not make a ruling, and we pointed that out to the district court at the motion, the post-trial motion hearing at the beginning of the hearing at page 195. We noted to the district court, you haven't ruled on this. And then I'd like to conclude with the district court's ruling, and this is on page 198. Your argument denied. And on the facts, there's ample facts, and I'll refer to the entire trial transcript to submit both counts to the jury, and that's what the court did. So the court denies the request for Rule 29, then also denies the request for double jeopardy. So it is clear that the court relied on the entire trial transcript. Thank you. And hopefully I'll be able to keep my eight minutes for my next argument. All right. All right. Or you can pick up papers in the park. All right. Out in the front lawn. Anything for your convenience. All right. I want to tell. All right. That's what my junior high school principal used to do to me. All right. Now we come to Gigi Castillo versus Ida Castro. Good morning, Your Honors. I'm Janice Mazur. I'm representing the appellant, Gigi Castillo. And I'd like to reserve about five minutes of my time for rebuttal. I think that there were two critical errors that the district court made in reviewing this case and in granting the summary judgment.  The district court, I believe, misunderstood the holding of the Morgan case, which was a new case at that time. Holding which case?
judges: Hug, Pregerson, Berzon